UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY STUBBS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COVENANT SECURITY SERVICES, LTD., et al.,<br><br>    Defendants. | Case No. 15-cv-00888-JCS<br><br>**ORDER DENYING DEFENDANT PHILLIPS 66 COMPANY'S MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 21, , 44 |

## I.  INTRODUCTION

This putative wage and hour class action was filed by Plaintiff Anthony Stubbs, Jr., on February 26, 2015 against Covenant Security Services Ltd, Covenant Security Systems LLC, and Covenant Security Worldwide LLC (collectively "Covenant") and Phillips 66 Company ("Phillips 66"). On June 11, 2015, a First Amended Complaint adding Jordan Stinson as a Plaintiff was filed.  Presently before the Court are two motions (the "Motions"): 1) a motion to dismiss by Defendant Phillips 66, Docket No. 21 (the "Motion to Dismiss"); and 2) a motion by Plaintiffs for leave to file a second amended complaint, Docket No. 44 ("Motion for Leave to Amend").  The Court finds that the Motions are  suitable for disposition without oral argument and therefore **vacates the hearing set for September 25, 2015 at 9:30 am** pursuant to Civil Local Rule 7-1(b). **The Case Management Conference set for the same date is moved from 9:30 am to 2:00 pm.** For the reasons stated below, the Motion to Dismiss is DENIED.  The Motion for Leave to Amend is GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The First Amended Complaint

Plaintiffs bring a "class action and enforcement action under California Code of Civil Procedure section 382 and the Labor Code Private Attorneys General Act of 2004, Labor Code sections 2698, et seq. ("PAGA") to recover wages, civil penalties and all other available relief on behalf of Plaintiffs, the State of California, and all persons that are or were employed by Defendants as hourly-paid, non-exempt employees, and who suffered one or more of the Labor Code violations set forth in this complaint." First Amended Complaint ("FAC"), ¶ 1. They allege that Covenant and Phillips 66 were joint employers of Plaintiffs Stubbs and Stinson. *Id*. ¶ 17. In particular, Plaintiffs allege that:

> COVENANT and PHILLIPS were both Plaintiffs' employers. COVENANT and PHILLIPS agreed to hire and employ the employees of COVENANT, including Mr. Stubbs and Ms. Stinson. COVENANT and PHILLIPS each retained some control over their employees. COVENANT employees, including but not limited to Mr. Stubbs, reported to Johnnie Durant, Jr., PHILLIPS' Site Security Lead. COVENANT and/or PHILLIPS paid Mr. Stubbs' and Ms. Stinson's salary, benefits, and taxes. Mr. Stubbs and Ms. Stinson were covered by COVENANT and PHILLIPS' personnel policies. COVENANT and PHILLIPS had the means or final authority to control employment practices or policies affecting their Co-Employees. COVENANT and/or PHILLIPS maintained personnel records for Mr. Stubbs and Ms. Stinson and employed them throughout their employment. COVENANT and PHILLIPS each retained the ability to control aspects of Mr. Stubbs and Ms. Stinson's employment, similar to the control exercised by a temporary agency or other organizations that shared employees, and therefore, COVENANT and PHILLIPS were joint employers.

*Id*. ¶ 18.

Plaintiffs allege that the Covenant defendants "are American-owned security officer services companies . . . with 3,200 employees throughout the United States" and that Covenant "provides security officers to a variety of commercial and government sectors, including but not limited to Aviation, Chemical & Petrochemical, Commercial Real Estate, Defense & Aerospace, Financial Institutions, Government Services, Manufacturing and Industrial, Residential Communities, Transportation, and Utilities." *Id*. ¶ 27. Plaintiffs allege that Philips 66 is, "[a]ccording to its website, . . . a diversified energy manufacturing and logistics company" that

"processes, transports, stores and markets fuels and products globally" and that Phillips 66 is "a growing energy manufacturing company with 14,000 employees." *Id*. ¶ 28.

According to Plaintiffs, Covenant employed "Plaintiffs and other persons as non-exempt or hourly security guard employees throughout California." *Id*. ¶ 29. Plaintiffs allege that Mr. Stubbs worked as a non-exempt, hourly security guard at Phillips 66 facilities located at Wilmington and Carson, California from October 2013 through March 2014, while Ms. Stinson worked as a non-exempt, hourly security guard at the Phillips 66 facility in Carson, California from January 2014 to May 2015. *Id*. ¶¶ 30-31. Plaintiffs allege that Defendants failed to provide required meal and rest breaks or to pay required premiums for missed breaks, in violation of California law. *Id*. ¶¶ 34-41. They assert the following claims against all defendants in the FAC: 1) Violation of California Labor Code §§ 226.7 & 512(a) (Unpaid Meal Period Premiums); 2) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); 3) Violation of California Labor Code §§ 201-203 (Wages Not Timely Paid Upon Termination); 4) Violation of California Labor Code §226(a) (Non-Compliant Wage Statements); 5) Violation of Labor Code §§ 2698, *et seq*. ("PAGA"); and 6) Violation of California Business & Professions Code §§ 17200, *et seq*. *Id*. ¶¶ 45-86.

Plaintiffs assert the claims in the FAC on behalf of five proposed sub-classes. *Id*. ¶ 22. They are defined as follows:

> (a) All non-exempt or hourly Security Guard employees of COVENANT who were not provided timely, uninterrupted meal periods, or who were not provided premium pay for late, missed or interrupted meal periods ("Meal Period Subclass");
>
> (b) All non-exempt or hourly Security Guard employees of COVENANT who were not authorized and permitted to take all rest periods, or who were not provided premium pay for missed or interrupted rest periods ("Rest Period Subclass");
>
> (c) All non-exempt or hourly Security Guard employees of COVENANT who did not receive complete accurate itemized wage statements ("Wage Statement Subclass");
>
> (d) All non-exempt or hourly Security Guard employees of COVENANT who are no longer working for COVENANT and were not paid all wages due, including but not limited to premium pay ("LC 203 Subclass"); and

3

(e) All non-exempt or hourly employees who worked for Defendants in California within one year prior to the date of the letter from Mr. Stubbs' and Ms. Stinson's counsel to the California Labor Workforce Development Agency ("LWDA") until the date of certification ("PAGA Subclass").

*Id*.

### B. The Motion to Dismiss

In the Motion to Dismiss, Phillips 66 asserts that all of Plaintiffs' claims fail because to prevail upon them, Plaintiffs must establish that Phillips 66 is their employer and they have not adequately alleged that under California law they have an employee-employer relationship with Phillips 66. Motion to Dismiss at 1. Rather, Phillips 66 contends, Plaintiffs concede that they are employees of Covenant. *Id*. at 2 (citing FAC ¶ 28).

Phillips 66 rejects Plaintiffs' allegation that Covenant and Phillips 66 are joint employers, arguing that the cases cited by Plaintiffs in support of this allegation do not involve claims under the California Labor Code and therefore do not apply. *Id.* at 5 (citing *Chao v. A-One Med. Services, Inc*., 346 F.3d 908 (9th Cir. 2003); *Mathieu v. Norell*, 115 Cal. App. 4th 1174 (Cal. Ct. App. 2004)). The appropriate test of whether Phillips 66 is an employer under the California Labor Code is found in California common law, Phillips 66 contends, as set forth in *Borello & Sons,Inc. v. Dep't of Ind. Relations*, 48 Cal. 3d 841 (1989). *Id.* at 6 (citing *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 529, 530-531 (2014)). Under that test, it asserts, Plaintiffs must allege facts showing that there is a right to control the employment relationship. *Id*. According to Phillips 66, Plaintiffs have not alleged such facts here because they have not alleged facts showing "a comprehensive and immediate level of 'day-to-day' authority over employment decisions." *Id*. (quoting *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009)). Instead, Phillips 66 asserts, Plaintiffs have offered only conclusory (and sometimes contradictory) allegations that it controls the employment relationship, which are insufficient to survive a motion to dismiss. *Id*. at 7-9 (citing *Mayfield v. County of Merced*, No. CV F 13-1619 LJO BAM, 2014 WL 2574791, at * 10 (E.D. Cal. Jun. 9, 2014); *Henninghan v. Insphere Ins. Solutions, Inc.*, No. 13-cv-00638-WHO, 2013 WL 6019486, at *3 (N.D. Cal. 2013); FAC ¶ 18). According to Phillips 66, the allegations here are distinguishable from those in *Kaspersyk v.*

4

*Shelter Security Serv.s*, No. C-13-3358 EMC, 2014 WL 1760040 (N.D. Cal. May 2, 2014).

Plaintiffs contend their allegations are sufficient to show that Phillips 66 was a common law employer and/or a joint employer. Opposition at 2. Even if the allegations are insufficient, Plaintiffs can amend the complaint to provide sufficient factual allegations to cure this deficiency, they assert. *Id*. In particular, in addition to the allegations contained in paragraph 18 of the FAC, Plaintiffs contend they can amend to add the following facts:

> 1. Defendant Phillips employed individuals to oversee the security guards and, thus, retained the right to control them. In Southern California, it was and is Johnnie Durant, Jr., Site Security Lead. In Northern California, it is Jeremy L. Johnson, Security Supervisor/FSO (Facility Security Officer). These individuals retained Phillips' right to control the security guards, who were directly employed by the Covenant Defendants. In fact, on his Linkedin page, Mr. Johnson lists: "[L]ead contract staff of 40 Security Supervisors, Officers & EMT's" as one of his main responsibilities. He also lists: "Identified $146K contract personnel cost savings opportunity at Arroyo Grande site through post optimization" as one of his accomplishments. In his prior position as Phillips' Security Coordinator/FSO at Phillips' Rodeo refinery, which he held for 7 years, from 2007 to 2014, he notes that as his main job, he "Led contract staff of 25 Security Supervisors and Officers." Per Phillips' HR Manager, Mr. Johnson "manage(d) the day-to-day operation of the Security forces" at Phillips' Rodeo refinery.
>
> 2. Defendant Phillips retained the right to control the hiring, firing, pay rates, and hours of work of the security guards.
>
> 3. Defendant Phillips informed security guards and supervisors of Phillips' policies and procedures, regulations, and safety issues/threats and required the guards' compliance.
>
> 4. Plaintiffs' job duties were a part of the regular business of Defendant Phillips. Due to the dangerous nature of Defendant Phillips' business – operating oil refineries that process diesel fuel, jet fuel, fuel oils, butane, sulfur and petroleum coke – and their susceptibility to health, safety and environmental disasters, Phillips must have security as part of their regular business for their operations. Defendant Phillips' management, along with Covenant's, controlled the terms of employment of Plaintiffs and other security guards. Therefore, Defendant Phillips was an employer of Plaintiffs.
>
> 5. Defendant Phillips paid the Covenant Defendants for the hours worked by Plaintiffs, including monies to cover the employer's share of the taxes, while the Covenant Defendants directly paid Plaintiffs' hourly wages by issuing them paychecks.

*Id*. at 4-5.

Plaintiffs argue that Phillips 66 is improperly using Rule 12(b)(6) to challenge class claims, which are more appropriately addressed with reference to Rule 23 of the Federal Rules of Civil Procedure. *Id*. Plaintiffs further assert that they have alleged sufficient facts in Paragraph 18 of the FAC to show that Phillips 66 was their employer. *Id*. (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64, 68 (2010); *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014)). Plaintiffs argue that under *Martinez*, the California Supreme Court broadened the definition of "employer" under the California Labor Code to go beyond California common law and to include anyone who "exercises control over the wages, hours or working conditions of employees." *Id*. (quoting *Martinez*, 59 Cal. 4th at 64). Plaintiffs argue that they have alleged sufficient facts in the FAC to meet this requirement. *Id*. This includes the allegations that Covenant employees reported to a Phillips 66 "Site Security Lead," that Plaintiffs were covered by Covenant *and* Phillips 66's personnel policies, that Phillips 66 had the "means or final authority to control employment practices or policies affecting their Co-Employees" (which includes hiring, firing, giving raises and reducing pay of security guards), and that Phillips 66 "retained the ability to control aspects of Mr. Stubbs and Ms. Stinson's employment." *Id*. at 8 (quoting FAC ¶ 18). Additional facts (summarized above) that Plaintiffs could add to the complaint, if given leave to amend, are contained in the declarations of Pamela Hill and Roxanne Davis.

Plaintiffs argue that the facts in this case as to the existence of an employer-employee relationship are comparable to those in *Kasperzyk*, in which Judge Chen found that the plaintiffs had adequately alleged an employment relationship on a Rule 12(b)(6) motion. *Id*. (citing *Kasperzyk*, 2014 WL 1760040, at *6). Plaintiffs argue that *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009), upon which Phillips 66 relies, is distinguishable because it involved claims by workers who worked for foreign countries abroad based on conditions there, where the only connection with Wal-Mart was the fact that their companies sold products to Wal-Mart. *Id*. at 10.

Plaintiffs further contend that their allegations are sufficient to demonstrate an employer-employee relationship under California common law. *Id*. at 11 (citing *bordello*, 48 Cal. 3d at 351). Under that test, courts consider not only the right to control but also certain other factors.

*Id.* According to Plaintiffs, they have alleged facts showing that many of these factors favor a finding of an employer-employee relationship. *Id*. at 11-13.

Finally, Plaintiffs contend the law is established that "a contracting employer acts as an 'employer' for purposes of applying state and federal antidiscrimination laws" and that the same rule should apply here. *Id*. at 13-15 (citing *Mathieu v. Norrell Corp*., 115 Cal. App. 4th 1174, 1184 (2004)).

In its Reply brief, Phillips 66 argues the *Martinez* test does not apply to Plaintiffs claims but rather, is limited to claims asserted under California Labor Code section 1194, for minimum wage. Reply at 2. It also reiterates its argument that the joint-employment approach taken in *Mathieu v. Norrell* does not apply to the facts here. *Id*. at 6. Rather, the only applicable test is the common law test of *Borello*, Phillips 66 asserts. *Id*. at 3. Phillips 66 further contends that the new facts Plaintiffs offer in connection with their request for leave to amend will not cure the deficiency in their allegations because a supervisory role on the part of Phillips 66 is not enough to demonstrate an employer-employee relationship; rather, Plaintiffs must allege facts sufficient to show that Phillips 66 had "complete" or "authoritative control" over Plaintiffs. Reply at 5 (citing *McDonald v. Shell Oil Co.*, 44 Cal. 3d 785, 790 (1955); *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009)).

### C. The Motion for Leave to Amend

Plaintiffs bring a Motion for Leave to Amend in order to add a new basis for liability as to Phillips 66 under California Labor Code section 2810.3, a new law providing that "[a] client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for . . . the payment of wages." Motion for Leave to Amend at 2, 7-10.[2] Plaintiffs contend the request to amend is timely and in good faith. *Id*. at 6-7. In addition, they argue that amendment is not futile; to the extent section 2810.3 applies only to labor contractors who operate "within the employer's usual course of business," this requirement

---

[2] The proposed amended complaint also includes additional facts relating to the alleged employer-employee relationship with Phillips 66. These allegations mirror the facts offered in Plaintiffs' opposition brief on the Motion to Dismiss.

7

is met because the crude oil refining that is the core of Phillip 66's business is inherently hazardous and therefore, the provision of security is an integral part of the business. *Id*. at 7. Plaintiffs also point out that the preceding statute, section 2810, explicitly protects security guards and therefore, it is reasonable to conclude that the new provision also protects security guards. *Id*. at 9. Plaintiffs argue that Phillips 66 will not be prejudiced by the addition of this new basis for liability because the case is at an early stage and they gave Defendants notice of their intent to add the theory as soon as they became aware of it and before Phillips 66 had filed a responsive pleading. *Id*. at 6.

Phillips 66 argues that leave to amend should be denied because amendment is futile. Opposition at 1. In particular, it argues that the new law defines "labor contractors" as including only those individuals or entities who perform labor "within the employer's usual course of business," meaning "the regular and customary work of a business." *Id*. at 2-3 (citing Cal. Lab. Code § 2810.3(a)(3) & (6)). According to Phillips 66, its "regular and customary work" is manufacturing energy and therefore, the provision of security services is not its "regular and customary work." *Id*. at 3. In support of its Opposition, Phillips 66 has offered a declaration by Jeremy Johnson, the Site Security Lead at the Phillips 66 facility at the Rodeo and Santa Maria facilities. *See* Docket No. 45 ("Johnson Decl."). Johnson states that his duties include, *inter alia*, oversight over Covenant employees and that he has "never been charged with handling fires or hazardous materials." Johnson Decl. ¶¶ 2-3.

In their Reply brief, Plaintiffs ask the Court to strike and disregard the Johnson Declaration on the basis that it is substantively and procedurally defective. Reply at 7. In particular, they contend the declaration does not respond to anything in the Motion for Leave to Amend and therefore must be offered with reference to its Motion to Dismiss as an end-run around the prohibition on raising new facts in a reply brief. *Id*. Further, Plaintiffs assert, Johnson does not state that he does not oversee the day-to-day work of security guards at the Phillips 66 facilities where he works, supporting the inference that he *does* engage in such oversight, as Plaintiffs contend. *Id*. at 8.

## III. ANALYSIS

### A. Legal Standard Under Rule 15(a)

When a party seeks to amend a pleading more than 21 days after serving it, or more than 21 days after service of a responsive pleading or motion, the party must obtain either the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a). The Federal Rules of Civil Procedure provide that "courts should freely give leave when justice so requires." *Id.*

"Courts may decline to grant leave to amend only if there is *strong evidence* of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)) (alteration in original; emphasis added). "A proposed amendment is futile only if it would be immediately subject to dismissal." *Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2015 WL 4913266, at *3 (N.D. Cal. Aug. 17, 2015) (citing *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011). "Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.*

### B. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

United States District Court
Northern District of California

1  non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
2  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that
3  would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
4  1990). A plaintiff need not plead a prima facie case in order to survive a motion to dismiss
5  pursuant to Rule 12(b)(6). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514−15 (2002); see also
6  *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (reaffirming the holding of *Swierkiewicz* in light of
7  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Twombly*). A complaint must however "contain either
8  direct or inferential allegations respecting all the material elements necessary to sustain recovery
9  under some viable legal theory." *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford
10 Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions'
11 or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678
12 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked
13 assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).
14 Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient
15 factual allegations to "allow[] the court to draw the reasonable inference that the defendant is
16 liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570).

17  **C.    Whether Leave to Amend is in the Interest of Justice**

18  Phillips 66 does not assert that it will be prejudiced if Plaintiffs are permitted to amend
19 their complaint, or that Plaintiffs have unduly delayed in bringing their request for leave to amend.
20 Rather, their sole basis for opposing Plaintiffs' request is that amendment is futile because
21 Plaintiffs' California Labor Code section 2810.3 does not apply to Phillips 66, as a matter of law.
22 The Court disagrees.

23  Section 2810.3 went into effect on January 1, 2015. The law is entitled, "Sharing of
24 liability with labor contractor; notification of violations; retaliation; construction of section" and
25 provides that "[a] client employer shall share with a labor contractor all civil legal responsibility
26 and civil liability for all workers supplied by that labor contractor for . . . [t]he payment of
27 wages." Cal. Lab. Code § 2810.3(b)(1). A "client employer" is defined as "a business entity,
28 regardless of its form, that obtains or is provided workers to perform labor within its usual course

United States District Court
Northern District of California

of business from a labor contractor." Cal. Lab. Code § 2810.3(a)(1)(A). A "labor contractor" is defined as "an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business." Cal. Lab. Code § 2810.3(a)(3). "'Usual course of business' means the regular and customary work of a business, performed within or upon the premises or worksite of the client employer." Cal. Labor Code § 2810.3(a)(6).

In the SAC, Plaintiffs assert that Phillips 66 is liable on all of its meal and rest break claims under California Labor Code section 2810.3 and include the following allegations in support of this assertion:

> Defendant PHILLIPS was and is a "client employer" within the meaning of Labor Code §2810.3. COVENANT was and is a "labor contractor" within the meaning of Labor Code 2810.3. COVENANT supplied and supplies PHILLIPS with workers to perform labor "within [PHILLIPS'] usual course of business," i.e., "within or upon the premises or worksite of the client employer." Labor Code §§2810.3(a)(3), (6). Plaintiffs' job duties were a part of the regular business of Defendant PHILLIPS. Due to the dangerous nature of Defendant PHILLIPS' business - operating oil refineries that process diesel fuel, jet fuel, fuel oils, butane, sulfur and petroleum coke - and their susceptibility to health, safety and environmental disasters, PHILLIPS must have security as part of their "usual course of business" operations. Thus, PHILLIPS shares all civil legal responsibility and civil liability for all workers supplied by COVENANT for the payment of wages.

SAC ¶ 22 (citing Cal. Lab. Code § 2810.3(b)). Plaintiffs further allege in the SAC that they have satisfied the notice requirements of section 2810.3. SAC ¶ 23 (citing Cal. Lab. Code § 2810.3(d)).

Phillips 66 asserts that its usual course of business is "energy manufacture and logistics work" and does not include the security services provided by Plaintiffs. Phillips 66 offers no cases, however, holding that where a business is inherently dangerous, the provision of security services may not be considered part of its "regular and customary work" under section 2810.3. Indeed, Phillips 66 cites no case law at all in support of its assertion that Plaintiffs' theory fails as a matter of law. Nor has the Court found any case law that obviously precludes Plaintiffs' theory of liability. In light of the fact that there appears to no case law that addresses how broadly the term "usual course of business" should be construed under this new law, the Court concludes that Phillips 66 has not demonstrated that Plaintiffs' request to amend their complaint to add a theory

1   of liability under section 2810.3 is futile.

2   The Court also rejects Phillips 66's reliance on a declaration by one of its Site Security
3   Leads, Jeremy Johnson, stating that security officers who work at Phillips 66 facilities do not deal
4   with fire or safety hazards as part of their work. This factual challenge is more appropriately
5   addressed at a later stage of the case, when an evidentiary record has been developed.[3]

### D. Whether Employer-Employee Relationship is Adequately Alleged Under California Law[4]

Whether a plaintiff is an employee or independent contractor depends on the circumstances of the relationship. "Each service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 354 (1989). "Following common law tradition, California decisions . . . uniformly declare that the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 350 (citations, internal quotation marks, and brackets omitted). The *Borello* court instructed that this test should not be applied rigidly, however, and that courts should also consider several "secondary" indicia of the nature of a service relationship. *Id*. The court noted that "[s]trong evidence in support of an employment relationship is the right to discharge at will, without cause." *Id*. (internal quotations and citations omitted). The *Borello* court listed the following secondary factors:

> (a) whether the one performing services is engaged in a distinct

---

[3] As discussed below, the Court also rejects Phillips 66's assertion that amendment is futile as to the employer-employee relationship between Plaintiffs and Phillips 66.

[4] Plaintiffs point to three different tests in support of their assertion that Phillips 66 is an employer under the California Labor Code: 1) the test adopted in *Martinez v. Combs*, 49 Cal. 4th 35 (2010) with reference to a claim for minimum wage under California Labor Code section 1194, based on the definition of "employer" used by California's Industrial Welfare Commission ("IWC") (including anyone who "exercise[s] control over the wages, hours or working conditions"); 2) the California common law test set forth in *Borello*; and 3) the approach that is taken towards "duel employers" in antidiscrimination cases such as *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1184 (2004). Although Phillips 66 argues that the first and third tests do not apply, it does not dispute that the common law test is applicable to the facts here. As the Court finds that Plaintiffs' allegations are sufficient to state a claim under California common law, it need not decide whether the other two approaches apply.

12

> occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id*. at 351.

Because the Court has found that it is in the interests of justice to permit Plaintiffs to file their Second Amended Complaint ("SAC"), it evaluates Plaintiffs' allegations in the SAC with respect to the question of whether Phillips 66 was their employer.[5] These allegations are sufficient to support a reasonable inference that Phillips 66 was Plaintiffs' employer. First, the SAC does not only allege generally that Phillips 66 retained the right to control Plaintiffs' work but also includes specific facts illustrating this right to control. In particular, it states as follows:

> COVENANT and PHILLIPS were both Plaintiffs' employers in the eyes of the law. COVENANT and PHILLIPS agreed to hire and employ the employees of COVENANT, including Mr. Stubbs and Ms. Stinson. COVENANT and PHILLIPS each retained some control over their employees. Defendant PHILLIPS and COVENANT retained the right to control the hiring, firing, pay rates, and hours of work of the security guards. Defendant PHILLIPS employed individuals to oversee the security guards and, thus, retained the right to control them. In Southern California, it was and is Johnnie Durant, Jr., Site Security Lead. In Northern California, it is currently Jeremy L. Johnson, Security Supervisor/FSO (Facility Security Officer). On Mr. Johnson's LinkedIn page, PHILLIPS' Security Supervisor/FSO (Facility Security Officer) lists one of his main responsibilities as: "[L]ead contract staff of 40 Security Supervisors, Officers & EMT's." Mr. Johnson also lists: "Identified $146K contract personnel cost savings opportunity at Arroyo Grande site through post optimization" as one of his accomplishments, reflecting yet again PHILLIPS' control over the security guards. In Mr. Johnson's prior position as PHILLIPS' Security Coordinator/FSO at PHILLIPS' Rodeo refinery, in which he worked for 7 years, from 2007 to 2014, Mr. Johnson notes that as his main job, he "Led contract staff of 25 Security Supervisors and Officers." Per a PHILLIPS' HR Manager, Patrick Prosser, who gave Mr. Johnson a recommendation on his LinkedIn Profile page, Mr. Johnson "manage[d] the day-to-day

---

[5] As noted above, the allegations in the SAC on this question mirror the evidence presented by Plaintiffs in their opposition brief to show that they could amend their complaint to sufficiently plead an employee-employer relationship with Phillips 66. Thus, Phillips 66 has had an opportunity to address these allegations in the course of briefing its Motion to Dismiss.

operation of the Security forces" at PHILLIPS' Rodeo refinery. These individuals retained the right to control the security guards, who were directly employed by COVENANT and managed the day-to-day operations of the Security forces at PHILLIPS' California refineries, including but not limited to: (1) determining the schedules of the security guards, (2) approving raises of the security guards, (3) approving pay reductions of the security guards, (4) retaining the power to hire and fire Plaintiffs and other security guards, (5) being regularly present on-site, and (6) reviewing and approving applications for employment of security guards. Further, PHILLIPS' Site Security manager (1) instructed the security guards how to perform their job duties, (2) warned the security guards regarding their performance, (3) instructed Security Supervisors and managers to distribute copies of PHILLIPS' Code of Business Ethics ("PHILLIPS' Policies & Procedures") to security guards, which set forth in detail PHILLIPS' employment policies and procedures, including but not limited to the disciplining and termination of employees, (4) kept copies of PHILLIPS' Policies & Procedures in binders at the main gate of each PHILLIPS' facility and in a binder in the security supervisors' office for the security guards to review. Additionally, Defendant PHILLIPS' Health, Safety, and Environmental Manager: (1) was regularly present on-site, (2) oversaw PHILLIPS' Site Security Lead's decisions regarding the security guards, and (3) met weekly with PHILLIPS' Site Security Lead to discuss issues relating to the security guards. COVENANT and PHILLIPS each retained the ability to control aspects of Mr. Stubbs and Ms. Stinson's employment, similar to the control exercised by a temporary agency or other organizations that shared employees, and therefore, COVENANT and PHILLIPS were joint or common law employers.

SAC ¶ 18. Plaintiffs further allege that they were informed by Phillips 66 of its "policies and procedures, regulations, and safety issues/threats" and were required to comply with them. *Id*. ¶ 20.

In addition, Plaintiffs include specific allegations relating to the secondary factors under *Borello*. In particular, Plaintiffs allege that: 1) Phillips 66 "had the right to discharge the security guards with no notice"; 2) Plaintiffs "only worked at [Phillips 66] facilities as security guards during their employment"; 3) "[t]he security guards worked under the direction of [Phillips 66] management, including Johnnie Durant, Jr. . . ., [Phillips 66] Site Security Lead, and Michael Bechtol, [Phillips 66] Health, Safety, and Environmental Manager . . ."; 4) "Security guards are not considered positions that require a high degree of skill"; 5) Phillips 66's "payment to Covenant Defendants covered the cost of the security guards' uniform, equipment, and wages . . . ."; 6) "The security guards were regular employees who worked at [Phillips 66] facilities . . . continuously . . .[and] without any gaps"; 7) "Plaintiffs were paid by the hour, every 2 weeks";

14

and 8) "Plaintiffs' job duties were a part of the regular business of [Phillips 66] . . [because] [d]ue to the dangerous nature of [Phillip 66's] business – operating oil refineries – and their susceptibility to health, safety and environmental disasters, [Phillips 66] must have security as part of their regular business operations." *Id*. ¶ 21. Considered together, the allegations relating to Phillips 66's right to control Plaintiffs' work and the secondary *Borello* factors are sufficient to render plausible the allegation that Phillips 66 is their employer and therefore, to satisfy the requirements of Rule 12(b)(6). *See Kasperzyk v. Shetler Security Servs.*, 2014 WL 1760040, at * 6 (holding that employer-employee relationship was adequately alleged under *Borello* where plaintiff alleged that the director of security services for LucasFilm required security contractor to obtain approval for new hires, required personnel of security contractor to attend regular meetings to receive instructions about upcoming events and review any personnel issues, and required that he be informed when any security officer was terminated).

Phillips 66's reliance on *Doe I v. Wal-Mart Stores, Inc*. is misplaced. In that case, the plaintiffs were employees of overseas suppliers who sold goods to Wal-Mart and who were asserting claims based on the conditions in factories operated by the suppliers outside of the United States. 572 F.3d at 680. Although the plaintiffs included a conclusory allegation of control over their work by Wal-Mart, the only connection between their working conditions and Wal-Mart was "that Wal-Mart contracted with suppliers regarding deadlines, quality of products, materials used, prices, and other common buyer-seller contract terms." *Id*. at 683. The court reasoned that "[s]uch supply contract terms do not constitute an immediate level of day-to-day control over a supplier's employees so as to create an employment relationship between a purchaser and a supplier's employees." *Id*. (internal quotations and citations omitted). In contrast, Plaintiffs here have alleged specific facts indicating that they actually work at Phillips 66 facilities and that Phillips 66 exercises significant day-to-day control over their work. To the extent Phillips 66 contends these allegations are not sufficient to show "complete" or "authoritative" control, that is an inquiry that is more appropriately addressed at a later stage of the case given the highly factual and context-specific inquiry that is called for under *Borello*.

The Motion to Dismiss is DENIED.

## IV. CONCLUSION

For the reasons stated above, the Motion for Leave to Amend is GRANTED. The Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: September 16, 2015

JOSEPH C. SPERO
Chief Magistrate Judge